IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    C2R Global Manufacturing, Inc.,      Case No. 18-30182-beh

    Debtor.      Chapter 11

Verde Environmental Technologies, Inc.
d/b/a Verde Technologies,

    Plaintiff,      Adversary No. 20-02028-beh

v.

C2R Global Manufacturing, Inc.,

    Defendant.

**DECISION ON C2R'S MOTION TO DISMISS COUNT II
OF VERDE'S ADVERSARY COMPLAINT**

On October 29, 2018, C2R Global Manufacturing, Inc. filed a petition for relief under Chapter 11 of the Bankruptcy Code. Previously, on July 29, 2018, Verde Environmental Technologies, Inc. had filed a lawsuit against C2R in the Eastern District of Wisconsin, asserting claims for false advertising under 15 U.S.C. § 1125(a) and Wisconsin Statute § 100.18, as well as claims for infringement of two of its patents, U.S. Patent No. 8,475,837 B2 (the "'837 Patent") and U.S. Patent No. 8,535,711 B2 (the "'711 Patent").

After the debtor filed its bankruptcy petition, the litigation in the district court was stayed. Verde timely filed a proof of claim for $6,821,918.00, claiming damages asserted in its district court case. ECF POC No. 6.[1]

---

[1] Citations to the docket in the Bankruptcy Case No. 18-30182-beh are noted by "ECF."
Citations to the docket in the Adversary Proceeding No. 20-02028-beh are noted by "AP-ECF."

Subsequently, the parties have settled the patent claims at issue, but preserved the false advertising claims. ECF Doc. No. 215. Now, Verde filed the instant adversary proceeding, seeking preliminary and permanent injunctive relief related to its claims for false advertising under federal and state law.

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). To the extent that the issues may be deemed non-core but otherwise relate to the debtor's bankruptcy case under Title 11, the parties have given their explicit consent to the entry of appropriate orders and judgments by the bankruptcy judge. AP-ECF Doc. No. 1, at ¶ 7; CM-ECF Doc. No. 35, at ¶ 7. This decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

Verde is a Minnesota-based corporation that develops "research-based, scientifically proven solutions to reduce drug abuse, misuse, and negative environmental impact." AP-ECF Doc. No. 1, at ¶ 12. One of Verde's products is the Deterra Drug Deactivation System ("Deterra"), which deactivates prescription drugs using proprietary activated carbon. *Id.*

C2R, a Wisconsin corporation, is a direct competitor of Verde and sells products for the safe disposal and deactivation of prescription drugs to hospitals, pharmacies, law enforcement agencies, and individual consumers. C2R manufactures the Rx Destroyer line of products for chemical drug destruction. The Rx destroyer technology utilizes a combination of liquid dissolving agent and activated charcoal, whereby the medication begins dissolving on contact and the active medication ingredients are adsorbed or neutralized by the activated charcoal. AP-ECF Doc. No. 35, at ¶ 14.

Plaintiff Verde filed an adversary complaint in C2R's bankruptcy case on February 17, 2020, alleging two legal theories. The first count alleges false advertising by C2R under 15 U.S.C. § 1125(a) and is not challenged in this motion. The second count alleges false advertising under Wisconsin Statute section 100.18—the Deceptive Trade Practices Act (DTPA).

As part of C2R's advertising, it has a website dedicated to the Rx Destroyer line of product, which describes the products and their use. AP-ECF Doc. No. 35, at ¶ 19. Verde's complaint asserts that the statements and representations on C2R's website regarding the capacity of C2R's products are false, deceptive and misleading. AP-ECF Doc. No. 1, at ¶ 36. Count II of the complaint alleges C2R made statements to consumers in a public online advertisement regarding the capacity of its Rx Destroyer All-Purpose Products which were untrue, deceptive and misleading, and as such Verde has been irreparably harmed by that false advertising. The complaint seeks a preliminary and permanent injunction requiring C2R to engage in corrective advertising, among other things.

C2R answered the complaint, and also filed the instant motion to dismiss Count II of Verde's complaint. The crux of C2R's argument for its motion is twofold: (1) that Verde is not a member of the public and therefore lacks standing to assert a claim for relief under Wis. Stat. sec. 100.18, and (2) that Verde did not act in reliance on the alleged misrepresentations, which it says is also required for relief under sec. 100.18(1).[2]

## DISCUSSION

**A.    Motion to Dismiss Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), incorporated into Federal Bankruptcy Rules at Rule 7012, tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting legal briefs. *Parkway Bank & Trust v. Casali* (*In re Casali*), 517 B.R. 835, 840 (Bankr. N.D. Ill. 2014).

Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a short and plain statement of a claim showing that

---

[2] Unless otherwise specified, short citations to the Wisconsin statutes are noted by "sec." Short citations to the United States Bankruptcy Code are noted by "§."

the plaintiff is entitled to relief. *FIA Card Servs., N.A. v. Turzynski* (*In re Turzynski*), No. 11-A-02558, 2012 WL 1142401, at *1 (Bankr. N.D. Ill. Apr. 2, 2012) (citing Fed. R. Civ. P. 8(a)(2)). "The complaint need not contain exhaustive factual allegations, but a plaintiff's obligation to demonstrate an entitlement to relief 'requires more than labels and conclusions.'" *Iwaszczenko v. Neale* (*In re Neale*), 440 B.R. 510, 517 (Bankr. W.D. Wis. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* When deciding whether dismissal is warranted, the court must construe all allegations of the complaint as true and draw all reasonable inference in favor of the plaintiff. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

**B.     Elements of a Claim under Deceptive Trade Practices Act**

Wisconsin Statute sec. 100.18 provides:

> (1) No person, firm, [or] corporation . . . with intent to sell . . . any real estate, merchandise, securities, employment, [or] service . . . directly or indirectly, to the public for sale ... or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase . . . of any real estate, merchandise, securities, employment or service, shall make . . . directly or indirectly . . . an advertisement, announcement, statement or representation of any kind *to the public* relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms of conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.
> . . .
> (11)(b)2. Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under ch. 452 while that person is engaged in real estate practice, as defined in s. 452.01(6). . .

Wisconsin courts have identified three elements for a claim under sec. 100.18. To state such a claim, the plaintiff must establish that (1) the defendant made a representation to 'the public' with the intent to induce an obligation; (2) the representation was 'untrue, deceptive, or misleading'; and (3) the representation materially caused a pecuniary loss to the plaintiff. *Tietsworth v.*

*Harley-Davidson, Inc.*, 270 Wis. 2d 146, 169 (Wis. 2004); *Novell v. Migliaccio*, 309 Wis. 2d 132, 151 (Wis. 2008).

### 1.  Standing as a Member of the Public

C2R first contends that Verde cannot bring this action under sec. 100.18, because Verde is not a member of "the public" but only a competitor of C2R.

As a number of federal trial courts have framed it, the first relevant question is whether plaintiff is a member of the 'public' or the audience to whom the misrepresentation is directed, in order to bring a claim under sec. 100.18(1). *Clark Tech. LLC v. Corncob Inc.*, No. 18-CV-1559-JPS, 2019 WL 4279462, at *14 (E.D. Wis. Sept. 10, 2019) (citing *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922-23 (W.D. Wis. 2010) (relying on purpose of sec. 100.18, "'to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product' to a consumer" to conclude the statute is not designed to protect product manufacturers from the deceptive acts of their competitors)); *Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663–64 (W.D. Wis. 2009) ("[I]f [sec.] 100.18 extends to misrepresentations made to nonparties, application of the statute becomes almost nonsensical."). If plaintiff is not a member of "the public," the statute does not provide a cause of action. W*aukesha Cty., Wis. v. Nationwide Life Ins. Co.*, No. 06-C-0656-C, 2007 WL 902243, at *4 (W.D. Wis. Mar. 21, 2007) (dismissing claim where parties had long-term contractual relationship, and advertisement did not induce plaintiff to act).

C2R identifies a number of federal trial court decisions ruling that industry competitors would not be "the public" whom sec. 100.18 is designed to protect from misrepresentation. *See, e.g., Grasshopper Motorcycles, Ltd. v. Rivera*, No. 14-CV-320-SLC, 2015 WL 853564, *7 (W.D. Wis. Feb. 26, 2015) (on summary judgment, plaintiffs presented no evidence of loss from offending advertisements, nor facts to show they were misled by the ads); *Brainstorm Interactive, Inc. v. Sch. Specialty, Inc.*, No. 14-CV-50-WMC, 2014 WL 6893881,

*17 (W.D. Wis. Dec. 5, 2014) (granting summary judgment where plaintiff did not allege it was misled by defendant's statement); *Thermal Design, Inc. v. Am. Soc. of Heating, Refrig. & Air-Cond'g Eng'rs, Inc.*, 775 F. Supp. 2d 1082, 1089-90 (E.D. Wis. 2011) (same).

Verde reminds that its complaint is not so narrow—it also alleges that C2R made misrepresentations to prospective and actual third-party customers, and for that reason the motion to dismiss should be denied. Verde points to a recent unpublished decision of the Wisconsin Court of Appeals, *Lambrecht v. Remington*, 2020 WL 543922 (Wis. Ct. App. Feb. 4, 2020) (per curiam), as well as to that court's earlier decision, *Tim Torres Enterprises, Inc. v. Linscott,* 142 Wis. 2d 56 (Wis. Ct. App. 1987). Verde also points to broad policy language in *Hinrich v. DOW Chem Co.*, 389 Wis. 2d 669, 699–700 (Wis. 2020), about sec. 100.18 protecting each member of the public.

To the extent numerous federal court decisions have interpreted sec. 100.18 to deny claims of competitors as being outside "the public," Verde urges that that "[s]tate courts are the final arbiters of state law," *Barger v. State of Ind.*, 991 F.2d 394, 396 (7th Cir. 1993) and as such, this Court should follow rulings from *Tim Torres Enterprises* and the unpublished decision in *Lambrecht* to hold that Verde may state a statutory claim for false advertising.

Yes and no. The interpretation of Wisconsin statutes by Wisconsin appellate courts is authoritative. But Wisconsin courts would place little to no weight on the per curiam *Lambrecht* conclusion, given Wisconsin's own rule against citation of unpublished opinions. *See* Wis. Stat. (Rule) § 809.23(3). As for the *Tim Torres* decision, its weight on this issue likewise is questionable, but for different reasons. In that case, one custard purveyor sued another, where both vendors had some rights to sell the treat under the name "Gilles Frozen Custard," but in different locations. Disputes arose as to their selling restrictions, and defendant occasionally spread signs and sprinkled flyers stating his product was the only real "Gilles Frozen Custard." Plaintiff sued under sec. 100.18, and the matter went to trial. The issues on appeal were

sufficiency of the evidence to support the jury's verdict, and an inconsistency in the verdict. *Tim Torres,* 142 Wis. 2d at 59–60. The *Tim Torres* court of appeals was not asked to decide whether someone other than a member of "the public," as in the plaintiff competing purveyor, could seek pecuniary losses for misrepresentations made to "the public." *See Gallego v. Wal-Mart Stores, Inc.,* 288 Wis. 2d 229, 237 (Wis. Ct. App. 2005), explaining limited issues presented in *Tim Torres*.

But other Wisconsin court decisions shed light on the proper interpretation of the DTPA. In *Fricano v. Bank of America, NA,* 366 Wis. 2d 748 (Wis. Ct. App. 2015), the court explained that "the purpose of [sec.] 100.18 is to compensate members of 'the public' who, as a result of 'untrue, deceptive, or misleading statements,' are induced to take certain actions," citing *Kailin v. Armstrong,* 252 Wis. 2d 676, 709–710 (Wis. Ct. App. 2002). In other words, the *Fricano* court made a direct link between the "public" to whom statements were made and the "public" who were induced to take action leading to pecuniary loss (*i.e.*, deserving compensation). Quite recently, the state supreme court in *Hinrichs v. DOW Chemical Co.,* 389 Wis. 2d 669 (Wis. 2020), traced a long line of Wisconsin cases applying the "particular relationship" test to determine whether a plaintiff is a member of "the public" for purposes of sec. 100.18. *Hinrichs* identified an early case, *Automatic Merchandisers*, which explained that when it comes to discerning if a plaintiff is a member of 'the public,' "[t]he important factor is whether there is some particular relationship between the parties . . . [h]ere there is no peculiar relation between the defendants and the prospective purchasers which would distinguish the prospective purchasers from 'the public' which the legislature intended to protect." *State v. Automatic Merchandisers of Am., Inc.,* 64 Wis. 2d 659, 663 (Wis. 1974). *Automatic Merchandisers* drew the same link between the plaintiff member "of the public" and the pecuniary loss sustained after being induced to act, as did the court of appeals in *Fricano*.

Wisconsin courts agree that whether there is a particular relationship that would render a plaintiff not a member of "the public" and therefore not eligible to bring a sec. 100.18 claim depends upon its own peculiar facts and circumstances. *K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 301 Wis. 2d 109, 125 (Wis. 2007). While the question of whether a particular plaintiff qualifies as the public is "not a pure issue of law," *Roundy's Supermarkets, Inc. v. Nash-Finch Co.*, No. 08C0142, 2008 WL 5377907, *3 (E.D. Wis. Dec. 23, 2008), our courts agree it can be decided by the Court where "the undisputed facts establish that plaintiff had a particular relationship with" the defendant, *Bates v. Wisconsin Dep't of Workforce Dev.*, 636 F. Supp. 2d 797, 811 (W.D. Wis. 2009) *aff'd sub nom. Bates v. Wisconsin Dep't of Workforce Dev.*, 375 Fed. Appx. 633 (7th Cir. 2010).

For example, a plaintiff is no longer a member of "the public" under sec. 100.18(1) once he or she has entered into a contract to purchase the offered item. *Kailin*, 252 Wis. 2d at 709–710. In *Kailin*, the plaintiffs alleged that the defendants violated the DTPA when they failed to disclose a tenant's history of late rent payments. The tenant was in default when defendant accepted the offer to purchase and at the time of closing. The *Kailin* court concluded that "[o]nce the contract was made, the Kailins were no longer 'the public' under [sec. 100.18] because they had a particular relationship with Armstrong—that of a contracting party to buy the real estate that is the subject of his post-contractual representation." *Id.* at 710. Accordingly, the Kailins' claim was limited to alleged misrepresentations made *before* they entered into the contract to purchase, as the statute is directed at misrepresentations made to induce.

Even though C2R and Verde have not offered, and the Court has not found, Wisconsin state caselaw directly addressing whether a competitor of defendant can be a plaintiff under sec. 100.18[3], this Court concludes the

---

[3] C2R did cite, for example, *Willert v. Andre*, No. 17-CV-496-JDP, 2017 WL 5033658, *5 (W.D. Wis. Oct. 31, 2017), an unreported district court decision, where the defendant had argued that under the DTPA a plaintiff must be a member of the public to whom the misrepresentation

answer would be No. Wisconsin courts have interpreted the statute to require linkage between the plaintiff member of the "the public" who hears or receives the misrepresentation and who is induced to act on that statement, thereby suffering pecuniary loss. Verde's complaint does not allege that Verde was induced to act on C2R's advertisements. The link is missing, and would not be alleged if Verde amended its complaint.

### 2. Element of Reliance

Next, C2R asserts that Verde's complaint is deficient because it does not plead reliance—that Verde was induced to act, as a result of C2R's allegedly false statements and misrepresentations to its detriment. Verde, on the other hand, asserts that reliance is not part of the sec. 100.18 factors, citing *Novell v. Migliaccio*, 309 Wis. 2d 132, 153 (Wis. 2008) ("[R]easonable reliance is not an element of a § 100.18 cause of action.").

The reliance aspect is somewhat nuanced, but Verde is correct that reliance is not an element that must be pleaded. Justice Ziegler, in her *Novell* concurrence, explained that "the second and third elements of a Wis. Stat. sec. 100.18 claim include reasonable or justifiable reliance as a consideration." *Id.* at 159. The actual element is causation—did the representation materially induce or cause the hearer to suffer a pecuniary loss? Neither the plain text of the statute, nor any interpretation by the Wisconsin Supreme Court since its clear explication in *Novell* to distinguish this statutory claim from common law misrepresentation supports C2R's argument that reliance is an element of a claim under sec. 100.18(1). And, as already stated, even though Verde's complaint does not allege that Verde was induced to act on C2R's advertisements, Verde could not amend its complaint to say so.

---

was made. The *Willert* plaintiff relied on *Tim Torres Enterprises, Inc. v. Linscott,* 142 Wis. 2d 56 (Wis. Ct. App. 1987) to argue to the contrary, and defendant relied on the holding in the *Grice Eng'g, Inc. v. JG Innovations, Inc.,* 691 F. Supp. 2d 915, 922 (W.D. Wis. 2010). The *Willert* court agreed with the *Grice* reasoning, concluding that the Wisconsin Supreme Court, were it faced with the question, would rule "that a business cannot state a claim for misrepresentations made by its competitor to a third party."

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that C2R Global Manufacturing, Inc.'s Motion to Dismiss Count II of the Adversary Complaint is GRANTED. Verde Technologies' Count II of the Adversary Complaint fails to state a claim upon which relief can be granted and is dismissed with prejudice. A separate order will be entered.

Dated: May 18, 2020

By the Court:

_____
Beth E. Hanan
United States Bankruptcy Judge