IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    C2R Global Manufacturing, Inc.,      Case No. 18-30182-beh

        Debtor.      Chapter 11

Verde Environmental Technologies, Inc.
d/b/a Verde Technologies,

        Plaintiff,      Adversary No. 20-02028-beh

v.

C2R Global Manufacturing, Inc.,

        Defendant.

**ORDER ON MOTIONS TO SEAL RELATED TO
VERDE'S MOTION FOR A PRELIMINARY INJUNCTION**

      Pending before the Court are various motions to seal, filed by both parties. AP-ECF Doc. Nos. 4, 21, 39, 55, and 80.[1] In each instance, the moving party has filed on the docket a motion to seal, the sealed document, and a redacted version of the document. Additionally, the parties have supplied some evidence to support the motions, namely, declarations of officers within the companies explaining why the information to be protected falls within the scope of 11 U.S.C. § 107(b). AP-ECF Doc. Nos. 56, 68, 70, and 123. After reviewing the unredacted and redacted versions of the documents, and considering the strong preference for public access to information filed on a court's docket, *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597–98 (1978), the Court finds that a number of the proposed redactions have sufficient

---

[1] Citations to the docket in the Bankruptcy Case No. 18-30182-beh are noted by "ECF Doc. No." Citations to the docket in the Adversary Proceeding No. 20-02028-beh are noted by "AP-ECF Doc. No."

support for protection under § 107(b), but other items sought to be sealed lack adequate support. The Court will allow the parties additional time to attempt to provide such support.

## LAW

Section 107(a) of the Bankruptcy Code creates a blanket rule that all bankruptcy dockets are open to public examination:

> (a) Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a). "Public access to bankruptcy court records is recognized as an important policy by the Bankruptcy Code, the Bankruptcy Rules, and case law." *In re Motors Liquidation Co.*, 561 B.R. 36, 38 (Bankr. S.D.N.Y. 2016).

The Code, however, provides a limited exception to this blanket rule in section 107(b), which states in relevant part:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
>> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b). Federal Rule of Bankruptcy Procedure 9018, in turn, provides the vehicle for moving parties to invoke section 107(b), and it allows the court to issue any order which justice requires "to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018.

As a general rule, motions to seal briefs and exhibits are disfavored and should be granted only when necessary to prevent harm. *In re Motors Liquidation Co.*, 561 B.R. at 38. The moving party bears the burden to show that the information is protectable under § 107(b)(1). *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007). The burden of proof, though, is "heavy, requiring an extraordinary circumstance or compelling need." *In re Motors Liquidation*, 561 B.R. at 42. Evidence, and not argument or conclusory

statements, is required to support the extraordinary remedy of sealing documents. *Id.* Once a court finds that the movant has met its burden of proof—in other words, that the information requested to be protected falls within one of the categories described in section 107(b)[2]—"the court is required to protect a requesting interested party, and has no discretion to deny the application." *In re Handy Andy Home Imp. Centers, Inc.*, 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996) (quoting *In re Orion Picture Corp.*, 21 F.3d at 27.

In the absence of a Code definition for "trade secrets" or "confidential commercial information," the Court must look to other sources to find the meaning of the terms used in section 107(b).

Non-bankruptcy case law from courts within the Seventh Circuit is instructive to the extent that the courts have examined what type of information constitutes a "trade secret or other confidential research, development, or commercial information" warranting protection from public disclosure. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) (denying motions to seal, and instructing the parties that "the court will in the future deny outright any motion . . . that does not analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations. . . . Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success."); *Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 1-C-0298, 2014 WL 792086 (E.D. Wis. Feb. 25, 2014) ("Maintaining a document under seal may be necessary where public disclosure of the information would effectively afford 'other firms an unearned competitive advantage—unearned because the issue of public disclosure arises from the adventitious circumstance of the [document]'s having become caught up in litigation and as a result having become filed in court.'") (quoting

---

[2] The language of section 107(b) and Rule 9018 indicate that the categories enumerated are disjunctive. *See Video Software Dealers Assoc. v. Orion Picture Corp. (In re Orion Picture Corp.)*, 21 F.3d 24, 28 (2d Cir. 1994)) ("In short, this clear and unambiguous usage of "or" neither equates 'trade secret' with 'commercial information' nor requires the latter to reflect the same level of confidentiality as the former.").

*SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2008)); *see also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (describing the high burden to seal documents); *Encap LLC v. Scotts Co. LLC*, No. 11-CV-685, 2015 WL 12991188 (E.D. Wis. Jan. 8, 2015) (reviewing the parties' request to seal, document by document, to determine whether the documents at issue fell within the limited exception to public disclosure and noting that there is a presumption of public access to documents filed on the court's docket because "transparency enable[s] interested members of the public . . . to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties," but that an exception to disclosure exists "to ensure the judicial record is not used as a source of business information that might harm a litigant's competitive standing"). Additionally, in *In re A.G. Fin. Serv. Ctr., Inc.*, the Seventh Circuit withheld the debtor's customer list from public disclosure under the authority of sec. 107(b), because allowing public disclosure would diminish the value of the bankruptcy estate. 395 F.3d 410, 416 (7th Cir. 2005).

      Bankruptcy courts outside the Seventh Circuit provide guidance as well. The Second Circuit has defined "commercial information" as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion*, 21 F.3d at 27 (internal quotation marks omitted) (concluding that the bankruptcy court did not err by protecting information regarding the overall structure, terms, and conditions of a licensing agreement because disclosure would give Orion's competitors an unfair advantage). *Compare In re Georgetown Steel Co., LLC*, 306 B.R. 542, 546 (Bankr. D.S.C. 2004) (finding that the names and benefit packages of key employees were "confidential commercial information") (quoting *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003)), *and Robbins v. Tripp*, 510 B.R. 61, 67 (E.D. Va. 2014) (finding that an attorney's report, describing how counsel organized his practice, was "commercial information" because divulging it would place counsel at a worse

competitive position), *with In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996) (finding that the debtor's potential investor's identity and proposal letter were not "commercial information" because they "[did] not reveal aspects of debtors' [actual] commercial operations and debtors' competitors will not be unfairly advantaged by the disclosure").

With the above guidance in mind the Court now will undertake the "not-so-simple" task of reviewing the arguments and evidence submitted by the parties, to determine whether the moving party has met its burden with respect to each document that it wishes the Court to maintain under seal. *See Formax Inc.*, 2014 WL 792086, at *2 ("[T]he determination whether to grant a motion to seal is not always a simple matter. The parties submit briefs addressing each document they wish the court to maintain under seal, and the court must read their briefs and issue a decision applying the law to the facts before it. This diverts time and attention from the merits of the case and forces the parties and the court to devote time and resources to tangential issues that do not contribute to the resolution of the case. These diversions can be minimized if the parties exercise greater restraint in designating material confidential and, perhaps more importantly, give careful consideration *before* filing confidential material with the court.") (emphasis in original).

## ANALYSIS

Both C2R and Verde have requested that the Court seal information alleged to be trade secrets or confidential research, development, or commercial information. To meet the high burden to seal documents, C2R submitted declarations of Russell Robers, its principal and co-owner, and Milton Dallas, an officer and shareholder of the company. AP-ECF Doc. Nos. 56, 68, 123. Likewise, Verde submitted a declaration of its Chairman and C.E.O., Jason Sundby, in support of its motions to seal. AP-ECF Doc. No. 70.

The Court will address each party's requests to seal various categories of documents in turn.

## A. Documents or Information That May Remain Sealed

### 1. Trade Secret or Confidential Product Development Information

Turning first to excerpts of the deposition of Milton Dallas, AP-ECF Doc. No. 5, Lorentz Exhibit 1 *and* AP-ECF Doc. No. 24, Wilbert Exhibit 11, the Court finds only a portion of the material to require protection from public disclosure. In support of sealing these excerpts, Robers asserted that they contain confidential product design and development information. AP-ECF Doc. No. 123, ¶ 4. Though the Court is not wholly satisfied with this conclusory support, *see In re Motors Liquidation*, 561 B.R. at 42, a thorough review of the transcript proves that certain statements attest to C2R's proprietary information. Lines 45:1–24, 52:13–25, and 64:4-66:12 reveal information about C2R's product developing and manufacturing process that would provide a competitive advantage to others, and therefore may remain sealed. Robers also declares that cited excerpts of his own deposition, AP-ECF Doc. No. 24, Wilbert Exhibit 13, should be sealed because they include "confidential information regarding the design, development, and testing of the RxDestroyer product." AP-ECF Doc. No. 123, ¶ 5. Because the testimony discloses specific tests undertaken during product development, the discrete statements at lines 135:1–13; and 135:20–136:20 may remain sealed, although the general subject matter itself is not confidential.[3]

As to C2R's document reporting the "RxDestroyer Liquid & Charcoal Measurements per bottle," AP-ECF Doc. No. 5, Lorentz Exhibit 8, the Court agrees that it may remain sealed. Dallas declares that the formula of C2R's product is a confidential trade secret. He asserts that the exact components of its solution and the formula are secret, to the point that "not even C2R's employees have access to the formula." AP-ECF Doc. No. 68, ¶ 4. Robers echoes Dallas's testimony, asserting that disclosure of C2R's product design, composition, and testing would negatively impact the company. AP-ECF Doc.

---

[3] *See* In re C2R Glob. Mfg., Inc., No. 18-30182-beh, 2020 WL 5941330, at *2 n.4 (Bankr. E.D. Wis. Oct. 6, 2020).

No. 123, ¶ 10. Additionally, the Court previously concluded that this document, which discloses the carbon content of C2R's products, may remain under seal. *See* Case No. 18-30182-beh, ECF Doc. No. 294. Because a table of the exact quantities and information from this document can be found in Verde's memorandum of law in support of its motion for a preliminary injunction, that table therefore may remain sealed. AP-ECF Doc. No. 14, *only as to the table on page 6*.

Dallas also asserts that two emails should remain sealed because they disclose C2R's product development, testing and formula:

- AP-ECF Doc. No. 24, Wilbert Exhibit 16 – C2R emails, beginning at "WILLE043328"
- AP-ECF Doc. No. 24, Wilbert Exhibit 26 – C2R emails, beginning at "C2R_055478"

AP-ECF Doc. No. 68, ¶¶ 7, 10 ("C2R also considers its internal e-mail communications about product development and product testing to be confidential, and trade secret information. . . . [E]xamples of internal C2R e-mails discussing C2R's product development, testing and formula include the documents filed on March 2, 2020 as Wilbert Exhibits 16 and 26, which bears production numbers WILLE043328 and C2R_055478."). Although Dallas's testimony is lacking in specificity as why these documents should remain under seal, because these documents disclose the identity of the carbon used in C2R's products, as well as specific tests undertaken during product development, the Court concludes that the record establishes a basis to maintain these documents under seal.

Turning to Verde's requests, Verde seeks to have an email and attached spreadsheets sealed, AP-ECF Doc. No. 24, Wilbert Exhibit 20. In support, Sundby testifies that the document contains confidential information because it reflects Verde's intellectual property rights and its enforcement of those rights. AP-ECF Doc. No. 70, ¶ 9. After review, the Court concludes that the document and attachments are a competitor comparative sheet that discloses the identity and amounts of the carbon used in Verde's products, which

qualifies as confidential research and development and proprietary information, and therefore may remain under seal.

### 2. Other Commercial Information

While not all pricing information or customer lists are entitled to protection, *see Formax Inc.*, 2014 WL 792086, at *3, the Court finds that a limited amount of the parties' customer information may remain sealed. Specifically, the parties generated a few charts that name particular customers, quantify their sales with each of the companies, and track the trend over time of revenues generated from those customers. AP-ECF Doc. No. 40, Lorentz Exhibit 1; AP-ECF Doc. No. 58, *only as to the chart on page 8*; AP-ECF Doc. No. 81, *only as to the chart on page 20*. Both C2R and Verde provided testimony that this is confidential information, and the Court agrees. AP-ECF Doc. No. 70, ¶¶ 11, 13; AP-ECF Doc. No. 123, ¶ 6. These charts may remain sealed and protected from public disclosure.

Finally, Sundby seeks to protect a cover letter that he sent to Verde's shareholders in January 2019. AP-ECF Doc. No. 24, Wilbert Exhibit 8. Sundby testified that the letter "includes internal confidential information about Verde's recent revenue goals and business plan." AP-ECF Doc. No. 70, ¶ 6. The letter asks shareholders to maintain it as confidential, but it contains no confidential financial statements. Particular statements, however, discuss Verde's expansion strategy, plan for the future, and an update on Verde's litigation efforts. These communications reasonably fall under the "confidential commercial information" category and may remain sealed.

### B. Documents or Information to be Unsealed

### 1. Financial Information

First, C2R asserts that portions of Dallas's deposition testimony, AP-ECF Doc. No. 5, Lorentz Exhibit 1, should remain sealed because the testimony relates to C2R's financial status and revenues. Lines 24:12–24 reflect Dallas's estimates of C2R's historical revenue figures, from between 2006 and 2012. It is not self-evident how public disclosure of this information poses a present

risk of unfair competition from C2R's competitors. *See, e.g., Formax Inc.*, 2014 WL 792086, at *3 ("It is not apparent how disclosure of general historical information"—summaries of the plaintiff's competitive market share for the years 2004 and 2007 and estimates for the years 2009 and 2010—"would cause [the plaintiff] any competitive disadvantage," in contrast to "detailed, product-specific sales volume and cost data."). The same is true for lines 46:8–17, which reflect an estimate of the percentage of sales for one of C2R's products, as well as lines 47:5–48:3, which identify the individuals responsible for C2R's accounting. C2R does not explain how disclosure of this particular information would provide competitors an unfair market advantage. Absent additional factual and legal support that describes, in detail, how the information to be sealed constitutes "a trade secret or something comparable whose economic value depends on its secrecy," *Baxter Int'l.*, 297 F.3d at 547, these portions of the transcript will be unsealed.

Turning to Verde, Sundby asserts that certain information should remain sealed because it pertains to Verde's revenues, profit margins, and sales information by quarter from 2013–2019. Sundby supports this assertion with the bare statement: "Verde considers this information to be highly confidential as it is both commercially and competitively sensitive." AP-ECF Doc. No. 70, ¶¶ 3, 12, 13. Without more, the Court does not find a compelling reason to maintain seal on historical financial information. Further, because Verde is a publicly traded company, its sales and revenue are available to the public outside the realm of this Court. *See* https://www.dnb.com/business-directory/company-profiles.verde_environmental_technologies.1d0ef0a36483de1dabf46851f1abeeda.html; https://www.bloomberg.com/profile/company/0933303D:US. For those reasons, the following documents will be unsealed:

- AP-ECF Doc. No. 23 – sealed version of C2R's memorandum supporting Objection to Preliminary Injunction
- AP-ECF Doc. No. 24, Wilbert Exhibit 18 – Spreadsheet of Verde's quarterly financials, 2013-2019

- AP-ECF Doc. No. 57 – sealed version of C2R's memorandum supporting Surreply
- AP-ECF Doc. No. 58 – Declaration of Thomas Britven, *only as to statements not found in AP-ECF Doc. No. 85* [4]
- AP-ECF Doc. No. 81 – Declaration of Donald Gorowsky

Sundby also testifies that Verde's business plan, dated 2014, "includes information about Verde's business concept, assessments of the market and competition, description of sales and marketing efforts, and . . . financial [projections] for 2014-2017" which warrants protection from public disclosure. AP-ECF Doc. No. 70 ¶ 2. The Court finds this information to be largely historical, and Verde has not explained how disclosure of this particular information would provide competitors an unfair market advantage, particularly when the business plan was presented in a competition and assessed by members of the public. *See* https://www.zoominfo.com/c/verde-technologies-inc/371814169 (providing Verde's revenue broken down by quarter); https://www.startribune.com/75f-of-mankato-wins-minnesota-cup/274766831/ (listing Verde as a competitor for the 2014 Minnesota Cup). Therefore, Verde's business plan, sealed under two exhibits on the Court's docket, will be unsealed. AP-ECF Doc. No. 5, Sundby Decl. Exhibit 1 *and* AP-ECF Doc. No. 24, Wilbert Exhibit 23.

### 2.     Email Communications

According to Dallas, Kathy Wille was a C2R sales consultant and Edward Hermann is a pharmacist who is also a part-time C2R employee. AP-ECF Doc. No. 68, ¶ 8. C2R wishes to maintain under seal the following internal communications between Ms. Wille and Mr. Hermann:

- AP-ECF Doc. No. 5, Lorentz Exhibit 6 – 2016 C2R emails, beginning at "C2R_036447," including one email from a distributor

---

[4] Certain statements regarding Verde's annual revenue, profit margins, and competition originally were filed under seal by C2R at AP-ECF Doc. No. 58. Later, Verde filed the Declaration of Donald Gorowsky in redacted form at AP-ECF Doc. No. 85, which unsealed a significant portion of those statements previously requested to be sealed by C2R. Accordingly, only those remaining statements in the Britven Declaration that Gorowsky did not disclose and which Verde designated as requiring protection from public disclosure are considered.

- AP-ECF Doc. No. 5, Lorentz Exhibit 7 – 2016 C2R emails, beginning at "C2R_012936," regarding testing by Pfizer, and possible testing by Nowicki
- AP-ECF Doc. No. 5, Lorentz Exhibit 9 – 2016 C2R emails, beginning at "C2R_036592," regarding efficacy of activated carbon, possible labeling

In support of C2R's request to seal these communications, Dallas provides the following explanation:

> While C2R has made final test results public, C2R does not make its internal e-mail public. Further, Verde appears to have selected incomplete portions of larger e-mail conversations that took place over multiple e-mails and included some non-e-mail discussions. Making select portions public of otherwise private conversations that Verde has selected, while the reminder of the conversations are not available to the public, is likely to harm C2R's business and reputation.

AP-ECF Doc. No. 68, ¶ 9. This explanation does not identify which particular statements within these emails C2R believes reveal secret information about product development, and it is not the Court's burden to comb through the materials in an effort to find that information. *See Northwestern Nat. Ins. Co. v. Baltes,* 15 F.3d 660, 662–63 (7th Cir.1994) (judges are not archaeologists excavating masses of papers in search of tidbits). Nor does C2R explain how disclosure of such information would provide competitors an unfair advantage in product development, or how or why such information has independent economic value because it is known to C2R and not others. Absent additional factual and legal support that describes, in detail, how each segment of the information to be sealed constitutes "a trade secret or something comparable whose economic value depends on its secrecy," *Baxter Int'l.*, 297 F.3d at 547, these documents will be unsealed.

Dallas then refers to another group of emails that he maintains should be sealed because they concern "a variety of private company strategy discussions including sales strategies, marketing strategies, competition, product formulation, and product testing." AP-ECF Doc. No. 68, ¶ 11. Those documents include:

- AP-ECF Doc. No. 40, Lorentz Exhibit 10 – Feb. 2014 C2R emails, beginning at "WILLE016028"
- AP-ECF Doc. No. 40, Lorentz Exhibit 12 – 2012-2013 C2R emails regarding Medsaway and Drug Buster, beginning at "C2R_015158"
- AP-ECF Doc. No. 40, Lorentz Exhibit 13 – 2013 C2R emails comparing Drug Buster pricing with Medsaway, beginning at "WILLE011857"
- AP-ECF Doc. No. 40, Lorentz Exhibit 14 – July 2014 C2R emails re phone contacts with potential customers, beginning at "WILLE025675"
- AP-ECF Doc. No. 40, Lorentz Exhibit 19 – 2013 C2R emails re strategies for Drug Buster website versus competitors, beginning at "WILLE011384"
- AP-ECF Doc. No. 40, Lorentz Exhibit 20 – 2013 C2R emails comparing Drug Buster and competitor websites, beginning at "WILLE011809"
- AP-ECF Doc. No. 40, Lorentz Exhibit 21 – 2013 C2R email describing Medsaway ad and attaching it, beginning at "C2R_015186"

Dallas then asserts that public disclosure of C2R's business strategies reflected in these emails and the attachments would place C2R at a significant competitive disadvantage because it would reveal C2R's customer acquisition strategies, sales strategies, and pricing strategies, and that "[p]ublic disclosure of this information would give other competitors an unearned competitive advantage because C2R's competitors could use that information to offer similar products to customers in the drug disposal industry without the need to invest the time and money in developing their own sales and pricing strategies." AP-ECF Doc. No. 68, ¶ 14; *see also* AP-ECF Doc. No. 56, ¶ 7 (Robers' declaration stating verbatim the same assertion as it pertains to AP-ECF Doc. Nos. 57, 58). Dallas provides no information, however—other than referring to the exhibit numbers of the documents themselves—to show that the documents at issue reveal any secret business strategies (for marketing or sales or a combination of both) or secret product formulation or testing information. Moreover, the information is largely historical; it is from 2012 through 2014 and identifies only potential customers. Presumably the Drug Buster website discussed in several of these emails has been solidified since 2014. Absent additional factual and legal support that describes, in detail, how

the information to be sealed constitutes "a trade secret or something comparable whose economic value depends on its secrecy," *Baxter Int'l.*, 297 F.3d at 547, these documents will be unsealed.

### 3. Documents that Otherwise Have no Support for Sealing

C2R asserts that certain portions of Dallas's testimony, AP-ECF Doc. No. 5, Lorentz Exhibit 1, reveal communications about product development and testing strategy, referring to lines 134:1–6 and 134:15–135:6. This testimony discusses an email which the Court previously determined should be unsealed in connection with Verde's motion for partial summary judgment filed in the debtor's main case, as Wilbert Declaration Exhibit 32. *See* Case No. 18-30182-beh, ECF Doc. No. 294. This testimony will be unsealed for the same reasons. Additionally, the lines at 45:25–46:7 and 46:18–20 are included in C2R's requests to seal, but reflect only attorney discussion with no relation to the companies or litigation. These portions of the deposition transcript will be unsealed.

Dallas also testified that C2R's customer identifying information, customer sales information, customer communications, and C2R's pricing information constitute confidential information. He asserts that this information is "critical to C2R in its effort to make repeat sales and expand its business." AP-ECF Doc. No. 68, ¶ 2. Dallas considers the following documents to be confidential customer communications:

- AP-ECF Doc. No. 24, Wilbert Exhibit 5 – 2017 C2R emails, beginning at "C2R_036690"
- AP-ECF Doc. No. 24, Wilbert Exhibit 6 – 2015 C2R emails, beginning at "WILLE068267"
- AP-ECF Doc. No. 40, Lorentz Exhibit 3 – 2017 C2R emails, beginning at "WILLE107751"
- AP-ECF Doc. No. 40, Lorentz Exhibit 5 – 2017 C2R emails, beginning at "WILLE110988"
- AP-ECF Doc. No. 40, Lorentz Exhibit 6 – 2017 C2R emails, beginning at "WILLE111115"
- AP-ECF Doc. No. 40, Lorentz Exhibit 7 – 2017 C2R emails, beginning at "WILLE110736"

- AP-ECF Doc. No. 40, Lorentz Exhibit 8 – 2013 C2R emails, beginning at "WILLE010163"
- AP-ECF Doc. No. 40, Lorentz Exhibit 9 – 2013 C2R emails, beginning at "WILLE004734"
- AP-ECF Doc. No. 40, Lorentz Exhibit 11 – 2015 C2R emails, beginning at "WILLE061931"
- AP-ECF Doc. No. 40, Lorentz Exhibit 15 – 2017 C2R emails, beginning at "C2R_019729"
- AP-ECF Doc. No. 40, Lorentz Exhibit 17 – 2013 C2R emails, beginning at "WILLE003329"
- AP-ECF Doc. No. 40, Lorentz Exhibit 18 – 2016 C2R emails, beginning at "WILLE096831"

Dallas's testimony fails to specify how particular information other than the identities—names and email addresses—of customers qualifies as confidential and subject to protection from public disclosure. *See Formax Inc.*, 2014 WL 792086, at *3 ("In Wisconsin, customer lists are not generally afforded protection . . . . Most customers typically shop around to see who has the best price."). The Court acknowledges that the various customers did not consent to be involved in this litigation, however, and will allow redactions as to the individual customers and contact information. This information is not relevant to this Court's determinations in the litigation. For these reasons, the Court will not protect the contents of these documents under seal in their entirety, but will permit counsel to file public versions of the documents redacting only the information that the Court has concluded warrants protection.

Next, in the memorandum supporting Verde's motion for a preliminary injunction, sentences from pages 4 and 8 of the memo have been disclosed only under seal. AP-ECF Doc. No. 14 (sealed); AP-ECF Doc. No. 18 (redacted public version). As to the statements on page 4, C2R provided no evidentiary support that these statements should be protected from public disclosure, and further, these statements are based on the portions of Dallas's testimony that subsequently were removed from seal. *See* AP-ECF Doc. No. 122; *see also Verde Techs. v. C2R Glob. Mfg., Inc. (In re C2R Glob. Mfg., Inc.)*, No. 18-30182-beh, Adv. No. 20-02028-beh, 2020 WL 5941330, at *2, *3 (Bankr. E.D. Wis.

Oct. 6, 2020) (stating the same information as the statements from the memorandum). Accordingly, both statements from page 4 will be unsealed. On page 8 of the memorandum, the parties seek to seal quoted statements from an email sent by C2R's consultant, Mr. Hermann. *See* AP-ECF Doc. No. 5, Lorentz Exhibit 9 – C2R emails, beginning at "C2R_036592." Because the Court has addressed this document and the information therein as lacking evidentiary support for protection, this portion of the memorandum will be unsealed. *See supra* B.2.

A C2R email, AP-ECF Doc. No. 5, Lorentz Exhibit 10, has not been identified by the parties in any evidentiary support declaration, and further, certain portions of this document already have been addressed and found not protectable from public disclosure. *See supra* B.2. (containing the same attachment at AP-ECF Doc. No. 40, Lorentz Exhibit 12 – C2R emails, beginning at "C2R_015158"); *see supra* B.2. (containing the same email timestamped Wednesday, October 02, 2013 3:39AM at AP-ECF Doc. No. 40, Lorentz Exhibit 19 – C2R emails, beginning at "WILLE011384"). For these reasons, it will be unsealed.

Finally, Verde seeks to maintain excerpts of deposition transcripts of its employees under seal. In support, Sundby testified that the deposition discussions relating to customer preferences, lost sales, and sales channels are "highly sensitive confidential business information." AP-ECF Doc. No. 70, ¶¶ 4, 5. Further, he asserts that Mr. Fowler's deposition discusses internal analyses and assessments of Verde's competitors, sales, and lost sales and is "confidential and commercially and competitively sensitive." *Id.* at ¶ 8. Sundby's entire declaration repeats his conclusory statements, without specifying which aspects of the documents qualify them as confidential. Verde does not explain how disclosure of this particular information would provide competitors an unfair market advantage. Absent additional factual and legal support that describes, in detail, how the information to be sealed constitutes "a trade secret or something comparable whose economic value depends on its

secrecy," *Baxter Int'l.*, 297 F.3d at 547, these transcript excerpts will be unsealed.

- AP-ECF Doc. No. 24, Wilbert Exhibit 3 – Deposition of Jason Sundby
- AP-ECF Doc. No. 24, Wilbert Exhibit 4 – Deposition of Shana Klesk
- AP-ECF Doc. No. 24, Wilbert Exhibit 19 – Deposition of William Fowler

## ORDER

1. The following documents shall remain under electronic seal until further order of the Court. No individual or entity shall have access to the document without further order of the Court. **Within 21 days** of the date of this Order, each party **shall submit a letter brief** addressing the appropriate period of time for each document to remain under seal. The Court will maintain protection from public disclosure for only the length of time that the information would cause an unfair market advantage to competitors.

    a. AP-ECF Doc. No. 5, Lorentz Exhibit 1 and AP-ECF Doc. No. 24, Wilbert Exhibit 11 – Deposition of Milton Dallas, *only as to lines 45:1–24, 52:13–25, and 64:4–66:12*
    b. AP-ECF Doc. No. 5, Lorentz Exhibit 8 – Rx Destroyer Liquid & Charcoal Measurements per bottle
    c. AP-ECF Doc. No. 14, Memorandum supporting preliminary injunction, *only as to statements on page 6*
    d. AP-ECF Doc. No. 24, Wilbert Exhibit 8 – Cover letter to Verde shareholders, dated January 28, 2019, *only as to portions discussing Verde's strategy and litigation*
    e. AP-ECF Doc. No. 24, Wilbert Exhibit 13 – Deposition of Russ Robers, *only as to lines 135:1–13 and 135:20–136:20*
    f. AP-ECF Doc. No. 24, Wilbert Exhibit 16 – C2R emails, beginning at "WILLE043328"
    g. AP-ECF Doc No. 24, Wilbert Exhibit 20 – Email with attached spreadsheet

h. AP-ECF Doc. No. 24, Wilbert Exhibit 26 – C2R emails, beginning at "C2R_055478"
    i. AP-ECF Doc. No. 40, Lorentz Exhibit 1 – Customer overlap analysis chart
    j. AP-ECF Doc. No. 58 – Declaration of Thomas Britven, *only as to the chart on page 8*
    k. AP-ECF Doc. No. 81 – Declaration of Donald Gorowsky, *only as to the chart on page 20*
2. **Anything** not identified in the preceding paragraph that is currently filed under seal shall be unsealed, unless the parties: (1) withdraw the document from the Court's record entirely, or (2) supplement the record with additional evidentiary support identifying why a particular document or statement should be withheld from public disclosure, and for how long. **The parties have 21 days from the date of this Order to take action**.
3. Additionally, the Court's directives and deadlines herein apply to the Court's Order in the main bankruptcy proceeding, Case No. 18-30182-beh, ECF Doc. No. 294.

**It is so ordered.**

Dated: December 10, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge